UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| A. L. OWENS,<br>  Plaintiff, | )<br>)<br>) |
| v. | )   Case No. 1:21-CV-423-JD-SLC<br>) |
| KILOLO KIJAKAZI, Commissioner of<br>Social Security | )<br>)<br>) |
|   Defendant. | )<br>) |

**OPINION AND ORDER**

  A. Owens applied for supplemental security income, alleging that he is unable to work primarily due to schizoaffective disorder, hallucinogen use disorder, and cannabis use. Mr. Owens was found to be not disabled in a May 2021 decision. Mr. Owens then filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition. Mr. Owens then filed his reply. As explained below, the Court affirms the Commissioner's decision.

**I. Factual Background**

  Until he stopped working, Mr. Owens worked as a cashier, sales attendant. (R. 25). Mr. Owens suffers from schizoaffective disorder, depressive type; other hallucinogen use disorder; and cannabis use. (R. 18). Mr. Owens applied for benefits in 2019. He alleges disability starting October 31, 2019. (R. 15). The ALJ issued an unfavorable decision on June 1, 2021. In that decision, the ALJ made the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can perform work requiring simple instructions and routine, repetitive tasks, defined as tasks and instructions that can be learned through short demonstration, up to and

1

>including one month; cannot perform work requiring a specific production rate, such as assembly-line work; can meet production requirements that allow a flexible and goal oriented pace; can maintain the focus, persistence, concentration, pace, and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods; can make only simple work-related decisions; could respond appropriately to predictable, routine changes in the workplace; could tolerate only brief and superficial interaction with supervisors, coworkers, and the general public, which is defined as occasional and casual contact with no prolonged conversations, but contact with supervisors still includes what is necessary for general instruction, task completion, or training.

(R. 20). Finding that jobs exist in significant numbers in the national economy that Mr. Owens can perform, the ALJ found that he is not disabled. The Appeals Council declined review, and Mr. Owens filed this action seeking judicial review of the Commissioner's decision.

## II.     Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400.

In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.     Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**IV. Discussion**

Mr. Owens offers one argument in support of reversal. He argues that the ALJ erred in evaluating his subjective symptoms. An ALJ's subjective symptom analysis is given special deference so long as the ALJ explains his reasoning and it is supported by the record. The Court will not overturn an ALJ's subjective symptom analysis unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). The claimant bears the burden of demonstrating that an ALJ's subjective symptom evaluation is patently wrong. *See Horr v. Berryhill*, 743 F. App'x 16, 19-20

(7th Cir. 2018). The regulations require the ALJ to look at a variety of factors in evaluating a claimant's symptoms, including the nature and intensity of pain, the effects of her pain on her ability to function, and daily activities. 20 C.F.R. § 404.1529(c).

The ALJ found that Mr. Owens' mental status examinations since April 2020 "have been unremarkable." (A.R. 24). The ALJ relied on Mr. Owens' ability to maintain appropriate interactions with providers during the relevant period. (A.R. 24). The ALJ also found that Mr. Owens "remained pleasant and attentive throughout the period, he has denied medication side effects, and although compliance has been in some doubt during the most recent visits, the claimant continued to do well." (A.R. 24). The ALJ also noted that there is no evidence Mr. Owens has ever been fired due to being unable to get along with managers. (A.R. 24). The ALJ also discussed Mr. Owens' subjective symptoms throughout the thorough summary of the medical evidence.

First, Mr. Owens takes issue with the ALJ's finding that his symptoms were "not entirely consistent with the medical and other evidence," arguing that this standard is heightened and improper. (A.R. 22). However, this boilerplate language is improper "only when the ALJ substitutes it for a full explanation of why credibility is lacking." *Atkins v. Saul*, 814 Fed. Appx. 150, 155 (7th Cir. 2020), *citing Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011). If the ALJ provided a full analysis of Mr. Owens' subjective symptoms, then there is no error in using this boilerplate language.

Mr. Owens asserts that the ALJ impermissibly relied on his ability to care for his one-year old son in finding he had only moderate limitations in his ability to adapt and manage himself. (A.R. 19). However, the ALJ does not improperly find that Mr. Owens' ability to care for his son translates to an ability to work full time, nor does the ALJ find that Mr. Owens'

ability to care for his son contradicts Mr. Owens' subjective symptoms. The ALJ's brief mention of Mr. Owens' caring for his son is not in the analysis of Mr. Owens' subjective symptoms, but rather in the discussion of the paragraph B criteria. The ALJ simply notes that Mr. Owens' is capable of caring for his son and has no issues with his own self-care, and therefore he only has moderate limitations in his ability to adapt and manage oneself. (A.R. 19). The ALJ did not improperly find that Mr. Owens' ability to care for his son equates to the ability to work full time.

Mr. Owens also argues that the ALJ overemphasized his previous work "as though it indicates [he] can work full time." [DE 19 at 9]. Mr. Owens also states that "[t]he ALJ's first paragraph … insinuates that [Mr. Owens] could just go work at Dollar Tree if he wanted to." *Id.* It is unclear where Mr. Owens is finding this insinuation in the ALJ's decision. The ALJ provides the following two sentences related to Mr. Owens' prior work:

> The claimant testified that he had last worked at Dollar Tree in February, and he reported that he quit this job because he did not want his rent to go up. He testified that he was "thinking about" working at Dollar Tree again, but that he had not heard back from them.

(A.R. 21). The ALJ makes no implication that Mr. Owens could return to work at the Dollar Tree, nor does the ALJ find that his prior work indicates he can work full time. The ALJ does nothing more than repeat Mr. Owens' own testimony and include the information as part of the summary of the medical evidence. The ALJ did not improperly suggest that Mr. Owens could work full time based on his prior work, nor does the ALJ use his prior work to discredit his subjective symptoms.

Mr. Owens also argues that the ALJ fails to consider the side effects of his medication. The ALJ provides information regarding Mr. Owens' medication in two separate paragraphs in the decision. In one paragraph, the ALJ simply repeats Mr. Owens' testimony, noting that Mr.

Owens does not take his medication when he watches his son due to drowsiness, and that although the medication makes him feel calm and collected, it also makes him feel lazy. (A.R. 21). In the second paragraph, the ALJ noted that despite reporting full medication compliance, Mr. Owens failed to pick up his medication refill twice between June and September 2020. (A.R. 23). The ALJ also noted that Mr. Owens denied medication side effects at multiple visits, and that he was doing well on his medication. (A.R. 23). Mr. Owens argues that the ALJ failed to consider how Mr. Owens might not need his medication refills if he was not taking his medication while watching his son. However, there is no evidence in the record to indicate that is the case. Mr. Owens testified to sometimes not taking his medication due to side effects while watching his son; however, he did not indicate how frequently he failed to take his medication. (A.R. 23). He also claimed full compliance during treatment. (A.R. 23). Mr. Owens bears the burden of demonstrating the ALJ's subjective symptom evaluation is patently wrong, and he has failed to do so here. It is not the ALJ's job to speculate as to how much medication Mr. Owens may have leftover based on a single statement that he sometimes does not take his medication while watching his son; rather, it is up to the claimant to provide proof and evidence to support his claim. *See Horr v. Berryhill*, 743 F.App'x 16, 19-20 (7th Cir. 2018). The ALJ fully considered Mr. Owens' medication compliance and the side effects of his medication in the decision.

Finally, Mr. Owens provides a paragraph of case law without any indication of how that law applies to his case. He appears to imply that the ALJ failed to provide any analysis of his subjective symptoms and instead merely recited medical evidence. Mr. Owens does not indicate how any of this case law is applicable to his case, and he does not reference the decision or any facts during this "argument." Similarly, Mr. Owens throws in two sentences implying that the

ALJ should have relied on his girlfriend's report that he required reminders to take medication without providing any case law or any argument as to why the ALJ should have provided her report more care and attention. The list of case law without evidence and the two sentence argument related to Mr. Owens' girlfriend's report are underdeveloped and therefore waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1992); *Handford ex rel I. H. v. Colvin*, No. 12 C 9173, 2014 U.S. Dist. LEXIS 3449, 2014 WL 114173, at *11 (N.D. Ill. 2014) (applying *Berkowitz* to underdeveloped arguments in a Social Security appeal). "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim."). *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

The ALJ did not err in analyzing Mr. Owens' subjective symptoms. Mr. Owens also made two underdeveloped arguments that fail to provide this court with the evidence to review the ALJ's decision. The decision of the ALJ is affirmed.

## CONCLUSION

For those reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: December 2, 2022

                                                  /s/ JON E. DEGUILIO
Chief Judge
United States District Court